EXBER, INC., a Nevada Corporation, dba EL CORTEZ HOTEL, Appellant, v. SLETTEN CONSTRUCTION COMPANY, a Montana Corporation; CHEYENNE CONSTRUCTION, INC., a Nevada Corporation; and GARCIA/CASE, INC., a California Corporation, Respondents.

No. 8236

December 22, 1976 558 P.2d 517

*George Rudiak,* Las Vegas, for Appellant.

*W. Owen Nitz,* and *Albright & McGimsey,* Las Vegas, for Respondents.

# OPINION

By the Court, MOWBRAY, J.:

This is an appeal from a summary judgment in favor of Respondents Sletten Construction Company (Sletten), Cheyenne Construction, Inc. (Cheyenne), and Garcia/Case, Inc.

(Garcia), ordering Appellant Exber, Inc., dba El Cortez Hotel (Exber), to submit to arbitration a construction contract dispute with its general contractor, Sletten.

This appeal is also taken from the district judge's post-judgment order denying Exber's motion under NRCP 52, wherein Exber asked that the summary judgment be amended by denying the oral motion for summary judgment made by Cheyenne and Garcia and by declaring that such summary judgment does not obligate Exber to arbitrate with the subcontractors, Cheyenne and Garcia, and by further declaring that Exber would not be bound by any arbitral award made in arbitration between Sletten and its subcontractors.

1. *The Facts.*

So far as pertinent to this appeal, the following are the admitted facts. On October 9, 1972, Exber entered into a construction contract with Sletten as general contractor for the construction of an addition to the El Cortez Hotel in Las Vegas. The contract incorporates by reference American Institute of Architects Document A201, entitled "General Conditions of the Contract for Construction." Subparagraph 7.10.1 provides in part:

"All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. . . . This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. . . ."[1]

On October 12, 1972, Sletten entered into subcontracts with Cheyenne and Garcia. Article 8 of each of the subcontracts obligated the subcontractor "[t]o be bound to the Contractor by the terms of the general conditions of the specifications and addenda, and to conform to and comply with the drawings and

---

[1]General Conditions of the Contract for Construction, Subparagraph 7.10.1:

"All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in Subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

specifications and addenda, and to assume toward the Contractor all the obligations and responsibilities that the Contractor assumes in and by the aforesaid documents toward the owner, in so far as they are applicable to this particular sub-contract." And Article C of each of the subcontracts provided for arbitration as follows: "That where arbitration or [sic] disputes is granted the Contractor under the terms of his contract on the project covered by this agreement, such right of arbitration shall be extended to the Sub-Contractor."

Hard rock, commonly known as "caliche", was encountered by Cheyenne soon after excavation of the building site was commenced. On February 13, 1973, Sletten presented to the architect a claim seeking compensation for extra work resulting from the encountering of the caliche, Cheyenne having previously made such a demand on Sletten, as provided in Subparagraphs 12.1.6[2] and 12.2.1[3] of the General Conditions.

The architect denied the claim for additional compensation by letter dated April 27, 1973, which letter was received by Sletten on April 30, 1973; on that date, Sletten notified Cheyenne that the claim had been denied. Cheyenne, on May 29, 1973, made a written demand on Sletten that the claim be submitted for arbitration.[4] On June 4, 1973, Sletten made a demand for arbitration upon Exber.

---

[2] Subparagraph 12.1.6:

"Should concealed conditions encountered in the performance of the Work below the surface of the ground be at variance with the conditions indicated by the Contract Documents or should unknown physical conditions below the surface of the ground of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inherent in work of the character provided for in this Contract, be encountered, the Contract Sum shall be equitably adjusted by Change Order upon claim by either party made within twenty days after the first observance of the conditions."

[3] Subparagraph 12.2.1:

"If the Contractor wishes to make a claim for an increase in the Contract Sum, he shall give the Architect written notice thereof within twenty days after the occurrence of the event giving rise to such claim. This notice shall be given by the Contractor before proceeding to execute the Work, except in an emergency endangering life or property in which case the Contractor shall proceed in accordance with Subparagraph 10.3.1. No such claim shall be valid unless so made. If the Owner and the Contractor cannot agree on the amount of the adjustment in the Contract Sum, it shall be determined by the Architect. Any change in the Contract Sum resulting from such claim shall be authorized by Change Order."

[4] The demand for arbitration set forth the nature of the dispute and the claim sought as follows:

"NATURE OF DISPUTE:

"In doing the excavation work under the above mentioned contract

The arbitration proceeding instituted by Cheyenne included Sletten and Exber; Garcia later joined therein. Consequently, the owner and the general contractor and its two subcontractors were all joined in a single arbitration proceeding before the American Arbitration Association. On August 4, 1973, Exber informed Sletten that it declined to participate in the arbitration for the reasons set forth in its letter of that date, which included the fact that Sletten had failed to make a timely demand for arbitration within 30 days after receiving the architect's written decision rejecting its request for additional compensation, as provided by Subparagraph 2.2.11 of the General Conditions.[5] Exber filed on September 14, 1973, its complaint for declaratory relief and to stay arbitration. Sletten subsequently filed a motion for summary judgment, on the ground that the district court was without jurisdiction to decide whether the demand for arbitration was timely. On April 2, 1974, Garcia, without objection, joined in the motion. On May 14, 1974, the district court filed a written decision holding among other things that "[h]ere, all the parties, including the subcontractors, Garcia/Case and Cheyenne Construction, were parties to an agreement

---

additional expenses for equipment and labor were incurred due to the unusual and unforeseen hardness of the caliche encountered beneath the surface of the ground. This area beneath the surface was at a variance with the conditions indicated by the contract documents. Furthermore, the hardness and extent of the caliche was of an unusual nature and differed materially from that ordinarily encountered in the area.

"CLAIM OR RELIEF SOUGHT (amount, if any)

| | |
|---|---:|
| "Insurance | $1,889.00 |
| "Equipment cost beyond schedule | 10,640.00 |
| "Labor to help drill for blasting | 895.27 |
| "Breaking ball | 503.75 |
| "Sanders Construction—blasting | 13,775.96 |
| "Trigger Bryant Security Service | 1,165.50 |
| "Garcia Case Co | 11,035.41 |
| | $39,904.89" |

[5]Subparagraph 2.2.11:

"If a decision of the architect is made in writing and states *that it is final but subject to appeal,* no demand for arbitration of a claim, dispute or other matter covered by such decision may be made later than thirty days after the date on which the party making the demand received the decision. The failure to demand arbitration within said thirty days' period will result in the Architect's decision becoming final and binding upon the Owner and the Contractor. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence but will not supersede any arbitration proceedings unless the decision is acceptable to the parties concerned." (Emphasis added.)

to arbitrate" and ordering that arbitration proceed. Judgment to the same effect was entered on June 10, 1974.

On June 24, 1974, Exber filed a Rule 52 motion to alter or amend the judgment, asking that summary judgment be denied as to Cheyenne and Garcia and that the court declare that Exber had no contractual duty to arbitrate with Cheyenne or Garcia and therefore would not be bound by any arbitral award rendered in arbitration between Sletten and its subcontractor. On January 28, 1975, an order was entered denying Exber's motion to alter or amend judgment.

2. *The Issues.*

The issues to be determined fall into two categories:

First, whether the district court erred in ruling that there had been substantial compliance by Sletten, the general contractor, with the condition precedent necessary to enable it to invoke the covenant to arbitrate contained in the construction contract between Exber and Sletten.

Second, whether the district court erred in ordering a consolidated arbitration between Exber and both the general contractor, Sletten, and Sletten's subcontractors, Cheyenne and Garcia.

A. Thirty-four days after Exber denied Sletten's claim for extra compensation, Sletten demanded arbitration. Exber contends that the delay violates the 30-day time limit prescribed in Subparagraph 2.2.11 of the General Condition, *supra.* Sletten urged, and the district court so found, that the 30-day period never began to run, because the architect's written denial did not state that it was "final but subject to appeal," as required by Subparagraph 2.2.11 of the General Conditions.

Exber argued in the court below that the issue of timeliness *constituted a condition precedent to the agreement to arbitrate* and was therefore an issue to be decided by the district court. Sletten urged that this was a dispute *arising under the contract* and should be resolved by arbitration.

We believe and so hold that the question of the timeliness of the demand for arbitration should have been resolved by arbitration and that the court should not have entered the order staying arbitration.

Both parties have cited the court to cases supporting their respective positions. An examination of these cases reflects a split of authority. Most of the cases discussing this issue have been collected in an A.L.R. annotation, "Waiver of, or Estoppel to Assert, Substantive Right or Right to Arbitrate as Question for Court or Arbitrator". Annot., 26 A.L.R.3d 604 (1969,

Supp. 1975). However, the annotation describes the majority rule as vesting the arbitrator with jurisdiction to decide this question of the timeliness of the demand for arbitration. Id., at 617. The justification for the rule is based on the breadth of the language ordinarily utilized in arbitration agreements (such as in the instant case, where the parties have agreed to arbitrate all disputes arising under the contract), indicating that matters of procedural compliance are issues for arbitration. In M. Domke, "The Law and Practice of Commercial Arbitration," § 15.02, at 148 (1968), the author discusses contractual time limits for demanding arbitration and concludes that compliance with said limits is an issue to be resolved by arbitration: "The question here is not *how* the arbitrator will apply the time limits—both *contractual and statutory*—but whether the arbitrator *should have* the competence to do so. That should be answered in the affirmative." (Emphasis in original.)

Exber, the owner, refused to arbitrate and sought to stay the arbitration proceeding, not because the arbitrability of the substantive issues was questioned, but rather because of a dispute as to whether the demand for arbitration had been timely made. The identical question has been resolved by the United States Supreme Court in a suit brought by a labor organization to compel arbitration under § 301 of the Labor Management Relations Act. In John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964), the company alleged it had no duty to arbitrate a dispute found by the court to be arbitrable, because the union had failed to comply with certain of the procedural prerequisites to arbitration required by the governing collective bargaining agreement. There, the High Court said, at 556–557:

"We think that labor disputes of the kind involved here cannot be broken down so easily into their 'substantive' and 'procedural' aspects. Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it. . . .

". . . It would be a curious rule which required that intertwined issues of 'substance' and 'procedure' growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums, one deciding after the other. Neither logic nor considerations of policy compel such a result.

"Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator. . . :"

While the principles enunciated in Wiley do not flow from an interpretation of the Uniform Arbitration Act, the Congressional policy on agreements to arbitrate, which led the Supreme Court to its resolution of this issue under § 301 of the Labor Management Relations Act, is parallel to the policies underlying the Uniform Arbitration Act. Under § 301, the function of the court is strictly confined to ascertaining whether the parties agreed to arbitrate the subject matter of the dispute. Similarly, NRS 38.045 (subsections 1 and 2) provides that, on application of a party showing an agreement to arbitrate, as described in NRS 38.035, and upon the opposing party's refusal to arbitrate, the court *shall* order the parties to proceed with arbitration; but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party. The court may stay an arbitration proceeding *only* on a showing that there is no agreement to arbitrate.[6]

All doubts concerning the arbitrability of the subject matter of the dispute are to be resolved in favor of arbitration. Once it is determined that an arbitrable issue exists, the parties are not to be deprived by the courts of the benefits of arbitration, for which they bargained—speed in the resolution of the dispute, and the employment of the specialized knowledge and competence of the arbitrator. John Wiley & Sons, Inc. v. Livingston, *supra,* 376 U.S. at 557–558.

In New Pueblo Constructors, Inc. v. Lake Patagonia Recreation Ass'n, 467 P.2d 88 (Ariz.App. 1970), the Arizona court held that arbitration agreements are to be liberally construed in favor of arbitration of disputes and that the arbitrators have full power to decide all the "questions or controversies" arising out

[6]NRS 38.045, subsections 1 and 2:

"1. On application of a party showing an agreement described in NRS 38.035, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied.

"2. On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration."

of the contract between the parties. The salient part of the agreement to arbitrate provided:

" '. . . All questions or controversies which may arise between the Contractor and the Owner, under or in reference to this contract, shall be subject to the decision of some competent person to be agreed upon by the Owner and the Contractor, and his decision shall be final and conclusive upon both parties. Should the Owner and Contractor be unable to agree upon such person, a board of three arbitrators shall be chosen, one by the Owner, one by the Contractor, and the third by the two so chosen, and the decision of any two of said arbitrators shall be final and binding upon the parties. . . .' " Id., at 89.

The Arizona statutes are almost identical with the Nevada statutes relating to arbitration.[7] The Arizona court said, at 91:

". . . [A]rbitration clauses should be construed liberally and any doubts as to whether or not the matter in question is subject to arbitration should be resolved in favor of arbitration. Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382 (2nd Cir. 1961); United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2nd Cir. 1959); Lundell v. Massey-Ferguson Services N.V., 277 F.Supp. 940 (N.D. Iowa 1967); Southern Bell Telephone & Telegraph Co. v. Louisiana Power and Light Co., 221 F.Supp. 364 (D.La. 1963); Firestone Tire & Rubber Co. v. United Rubber Workers of America, Local Union No. 100, AFL–CIO, 168 Cal.App.2d 444, 335 P.2d 990 (1959); Bewick v. Mecham, 26 Cal.2d 92, 156 P.2d 757 (1945)."

The evils incident to bifurcating the adjudication process (procedural issues being judiciable, and substantive issues being arbitrable) are manifest, as in the present case. The parties, obviously aware of congestion and delay in our court system, sought to protect themselves by providing for a quick and ready forum for resolution of any disputes that might arise between them. On June 4, 1973, such a dispute arose. Sletten made a demand for arbitration. Three and a half years later, because the court assumed jurisdiction to decide a question of procedural irregularity in presenting the demand, the dispute is still not resolved.

For the reasons hereinabove expressed, we believe that the

---

[7]Arizona has also adopted the Uniform Arbitration Act. See Ariz. Rev. Stat. 12–1501 (West Supp. 1975–1976).

question of the timeliness of the demand to arbitrate should have been determined by an arbitrator rather than the district court. The decision of the district court is, however, so clearly correct that it is unnecessary to remand and further compound the delays already incurred by the parties. In determining a question under an arbitration agreement, an arbitrator enjoys a broad discretion, but that discretion is not without limits. He is confined to interpreting and applying the agreement, and his award need not be enforced if it is arbitrary, capricious, or unsupported by the agreement. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593 (1960); Dallas Typographical Union v. A. H. Belo Corp., 372 F.2d 577 (5th Cir. 1967). The language in the instant agreement indicates unequivocally that a time limit is applicable only when the architect's written decisions state that they are "final but subject to appeal." Subparagraph 2.2.11, *supra*. For an arbitrator to have imposed a similar limitation with respect to a decision omitting such a statement would have been an abuse of discretion not entitled to enforcement by the district court. See Sollenberger v. AA Constr. Co., 481 P.2d 428 (Colo.App. 1971).[8]

[Headnote 6]

B. Next, we shall consider whether the district court erred in ordering a consolidated arbitration hearing between Exber and Sletten and Sletten's subcontractors, Cheyenne and Garcia.

The Minnesota Supreme Court has held that, under the Uniform Arbitration Act, its courts have power to order consolidation pursuant to provisions which confer upon its courts power to order parties to proceed with arbitration and to enforce an award as any other judgment. Grover-Dimond Assocs. v. American Arbitration Ass'n, 211 N.W.2d 787 (Minn. 1973). In Grover-Dimond Assocs., it was held that arbitration proceedings between the owners of a building and their contractor could be conducted jointly with an arbitration between the owners and their architect. The proceedings arose out of the construction of a building. The owners' contract with the architect contained an arbitration provision, as did the contractor's contract with the owners. The owners concluded that, in the

---

[8]Appellant Exber also complains that the district court did not address itself to (1) the question of whether filing a copy of the demand for arbitration with the architect was a condition precedent to arbitration or (2) whether failure to comply with the change order provisions of the contract was such a failure as to render the claim for extras unarbitrable. In accordance with the views expressed herein, we hold that these matters may be presented at the arbitration hearing.

course of construction, certain unauthorized expenses had been incurred by the architect and the contractor. The owners sought joint arbitration, in which the contractor concurred but the architect resisted. Affirming the trial court's decision denying the architect's motion to prohibit joint arbitration, the appellate court noted that nothing in the arbitration provisions in the contracts, or in the statute concerning arbitration, expressly deals with the question of joint arbitration. The court stated that it was clearly Minnesota's policy, as reflected by its arbitration statute, to encourage arbitration (as is reflected in Nevada's Arbitration Statute).[9] The court observed that the parties would use the same arbitrators and that to require the arbitrators to hear the same evidence twice would be to ascribe to the parties an intention not expressed in their agreements. It was added that, whether the proceedings in the case were treated as concurrent, joint, or consolidated hearings, it was manifestly in the interest of justice that all of the issues raised be laid to rest in one proceeding.

In the instant case, the same evidence, witnesses, and legal issues involved in the Exber-Sletten dispute will also be presented in the Sletten-Cheyenne-Garcia dispute. This is not a case of requiring a party to join in a proceeding against a stranger. There has been no showing of prejudice. We agree with the ruling of the district court that consolidation of the claims will make it possible to determine all the issues in one proceeding and avoid the possibility of conflicting awards, as well as the additional time and expense of separate proceedings.

3. *The Summary Judgment in Favor of Cheyenne and Garcia.*

Exber finally contends that the district court erred in entering summary judgment in favor of Respondents Cheyenne and Garcia, because they failed to comply with the formal requirements of NRCP 56.

At the hearing on Sletten's motion for summary judgment, all defendants appeared and argued through their attorneys. The proceeding was conducted as if it were a joint hearing on a consolidated motion for summary judgment. Garcia formally joined in the motion, whereas Cheyenne merely indicated that it joined in the arguments presented by Sletten's attorney.

On June 10, 1974, the court entered summary judgment for all defendants, noting that Garcia and Cheyenne had orally

---

[9]See Lane-Tahoe, Inc. v. Kindred Constr. Co., 91 Nev. 385, 389, 536 P.2d 491, 493 (1975): "The whole tenor of the [Uniform Arbitration] Act favors arbitration when the parties have agreed to that method of settling disputes between them."

joined in Sletten's formal Rule 56 motion. On June 24, 1974, Exber filed a Rule 59 motion to amend the judgment by denying the oral summary judgment motions advanced by Cheyenne and Garcia, and by seeking an order declaring that Exber was under no duty to arbitrate in a consolidated proceeding. The court found that Exber's objection was untimely. The court also refused to restore the injunction against Cheyenne and Garcia by staying consolidated arbitration. In doing so, the court considered whether it had authority to order consolidated arbitration. In arrogating to itself such power, the court adopted the more enlightened Grover-Dimond rationale discussed above.

 ██

Although Rule 56 motions should ordinarily be in writing, the instant case presents a situation wherein codefendants have orally joined in a written motion submitted by another codefendant. Appellant Exber made no objection to this procedure during argument on the motion. Failure to comply with the formal requirements of Rule 56 is subject to the harmless-error rule. See 6 Moore's Federal Practice, ¶ 56.14, at 56–357 (2d ed. 1948, 1975 Cum.Supp.), and cases cited therein.

 ██

A court may enter a judgment on a cross-motion for summary judgment made orally at a hearing on the original Rule 56 motion as long as the opposing party is not prejudiced. Here, despite the trial court's refusal to amend the judgment on the procedural grounds raised in appellant's Rule 59 motion to amend, the court nevertheless considered Exber's contention that consolidated arbitration was unauthorized. The parties submitted points and authorities on the subject, and the court rendered a decision on the merits.

"Rule 56 does not specify whether the court can enter summary judgment on its own in the absence of any request to do so. As is discussed more fully in the next section, the most common situation in which this question arises is when the court desires to enter judgment for a party opposing a summary judgment motion but no cross-motion has been made. It is well established that under these circumstances it is appropriate for the court to grant summary judgment. . . ." Wright & Miller, Federal Practice & Procedure, Civil § 2719, at 454 (1973).

The situation presented on this appeal is analogous to the one described above. The bases for permitting judgment on a cross-motion for summary judgment made orally at the original Rule 56 hearing are lack of any real prejudice visited on the

party against whom the judgment was granted, and implementation of the policy underlying Rule 56, which is expediting the disposition of cases wherever possible. Wright & Miller, *supra,* at 454–455. The same reasons justify the judgment in the instant case, because (1) Exber failed to timely object, (2) the court already had before it a proper motion submitted by one of the codefendants and merely granted the motion as to all defendants, and (3) Exber was afforded an opportunity to present argument on the merits of consolidated arbitration, which issue was resolved against Exber. Accordingly, for lack of any prejudice, and because of failure to timely object, the judgment is affirmed.

GUNDERSON, C. J., and BATJER, ZENOFF, and THOMPSON, JJ., concur.