138 Nev., Advance Opinion 41

IN THE SUPREME COURT OF THE STATE OF NEVADA

SR CONSTRUCTION, INC., A NEVADA
DOMESTIC CORPORATION,
Appellant,
vs.
PEEK BROTHERS CONSTRUCTION,
INC., A NEVADA DOMESTIC
CORPORATION,
Respondent.

No. 82786



FILED

JUN 02 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a motion to compel arbitration. Second Judicial District Court, Washoe County; Barry L. Breslow, Judge.

*Reversed and remanded.*

Allison Law Firm Chtd. and Noah G. Allison and Heather Caliguire Fleming, Henderson,
for Appellant.

Viloria, Oliphant, Oster & Aman LLP and Nathan J. Aman and Emilee N. Hammond, Reno,
for Respondent.

_____

BEFORE THE SUPREME COURT, SILVER, CADISH, AND PICKERING, JJ.

22-17540

*OPINION*

By the Court, PICKERING, J.:

This is an appeal from an order denying a motion to compel arbitration. Appellant SR Construction, Inc., argues that the district court erroneously denied its motion to compel because its master subcontract agreement (MSA) with respondent Peek Brothers Construction, Inc., includes a valid arbitration provision that applies to the parties' underlying dispute. Peek contends the district court properly held that the underlying dispute falls outside the bounds of the parties' arbitration agreement. The parties do not contest the validity of the MSA or its arbitration provision, thus posing a single question to this court in this appeal: Does the parties' dispute fit within the scope of the arbitration provision contained in the MSA?

I.

SR (a general contractor) and Peek (a subcontractor) executed the MSA to establish the general terms and conditions of their future work together. The MSA includes an arbitration provision:

> (a) Contractor and Subcontractor shall not be obligated to resolve disputes arising under this Subcontract by arbitration, unless:
>
> (i) the prime contract has an arbitration requirement; and
>
> (ii) a particular dispute between Contractor and Subcontractor involves issues of fact or law which *the Contractor* is required to arbitrate under the terms of the prime contract.

(emphasis added). SR later executed an agreement (the prime contract) with Sparks Family Medical Center, Inc., an affiliate of United Health

Services of Delaware (UHS, the project owner), to construct a major medical center in Reno (the project). The prime contract consists of two documents—American Institute of Architects (AIA) Document A133–2009 and AIA Document A201–2017—each of which incorporates the other by reference. The prime contract is a "cost-plus" agreement with a guaranteed maximum price (GMP), meaning that UHS as the project owner bears all project costs up to the GMP. *Cost-Plus Contract, Black's Law Dictionary* (11th ed. 2019) ("[A] contract in which payment is based on a fixed fee or a percentage added to the actual cost incurred; esp., a construction contract in which the owner pays to the builder the actual costs of material and labor plus a fixed percentage over that amount."). The parties may seek to increase the GMP and recover additional "necessarily incurred" costs using written change orders. If costs exceed the GMP as modified by any approved change orders, then SR is responsible for the excess costs.

The prime contract also includes an arbitration provision, which states as follows:

> Arbitration shall be utilized as the method for binding dispute resolution in the Agreement[.] [A]ny *Claim* subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association in accordance with its Construction Industry Arbitration Rules in effect on the date of the Agreement.

(emphasis added). A "claim" under the contract is "a demand or assertion by one of the parties seeking, as a matter of right, payment of money, a change in the Contract Time, or other relief with respect to the terms of the Contract . . . [and] other disputes and matters in question between the

SUPREME COURT
OF
NEVADA

(O) 1947A

Owner and Contractor *arising out of or relating to the Contract.*" (emphasis added). The prime contract further permits SR to include subcontractors in arbitration of a claim:

> Arbitration, at the Contractor's election, may include Subcontractors to Contractor that Contractor deems relevant to the matter in dispute and upon Contractor's request, the Arbitrator shall decide all or a particular portion of a dispute between the Contractor and a Subcontractor and, as Contractor may request, the Arbitrator shall speak to the extent to which the Arbitrator's decisions regarding a dispute between Contractor and Owner and the dispute between Contractor and Subcontractor are inter-related.

After executing the prime contract with UHS, SR executed a work order with Peek to complete the core and shell civil work for the project, which included bringing the building pad to the proper subgrade elevation. SR agreed to pay Peek $3,062,000 for its work, and the work order expressly incorporated the MSA's terms and obligations by reference.

The dispute underlying SR's motion to compel arbitration arose when—for reasons the parties contest—Peek deviated from the means and methods it used to bid the project in elevating the building pad. Peek states that it bid the project assuming it would mass-grade the building pad to a few feet below the required elevation, dig the building footings and plumbing trenches, and then use the "spoils" from excavating the footings and trenches to backfill and grade the pad to the proper subgrade elevation. Instead, Peek imported approximately 150,000 square feet of additional material to raise the pad to the proper subgrade elevation *before* digging the footings and trenches. Peek alleges that it deviated from its bid-based plans when an SR employee directed it to obtain extra material to raise the pad

SUPREME COURT
OF
NEVADA

(O) 1947A

4

earlier because SR did not want to wait for Peek to excavate the footings and trenches. SR alleges that Peek did not know the pad's elevation from the start and thus imported additional material under the incorrect assumption that it needed it.

The above-described changes added $140,000 to Peek's costs, which it sought to recover from SR after the fact in two written change orders. SR relayed the change orders to UHS, who deemed the changes unnecessary, rejected the change orders, and directed SR to initiate dispute resolution with Peek. Before SR could do so, Peek sued SR in district court, alleging breach of contract, unjust enrichment, and violation of NRS Chapter 624 and seeking over $140,000 in damages and attorney fees. SR filed a demand for arbitration with the American Arbitration Association (AAA), in which it named UHS and Peek as defendants, and in tandem with its demand, SR moved to compel arbitration in district court. The district court denied SR's motion. It held that the prime contract required arbitration only of disputes between UHS and SR, so Peek's dispute with SR was not arbitrable under the MSA because it did not involve UHS and, therefore, could not involve common issues of fact or law that SR must arbitrate under the prime contract. SR appeals, and we reverse.[1]

II.

On appeal, SR argues that Peek's dispute involves issues of fact and law about the reasonableness of its additional costs that SR must arbitrate with UHS under the prime contract, so this dispute is therefore

---

[1]This court stayed litigation below pending resolution of this appeal, which order we now vacate.

arbitrable as between SR and Peek under the MSA provision. SR further argues that the district court ignored the presumption of arbitrability when it denied the motion to compel and that Peek cannot artfully plead its way out of arbitration by omitting UHS as a defendant. Peek argues that this dispute does not involve UHS because SR is solely responsible for its additional costs, and the district court therefore correctly concluded that this dispute is not arbitrable under the MSA provision because the prime contract only mandates arbitration of disputes between UHS and SR. Peek further argues that SR's interpretation of the MSA provision would create the absurd result of forcing SR and Peek to arbitrate all disputes.

To compel arbitration, a moving party must establish that there is an enforceable agreement to arbitrate and that the dispute fits within the scope of the arbitration agreement. 4 Am. Jur. 2d *Alternative Dispute Resolution* § 100 (2018); *see also Phillips v. Parker*, 106 Nev. 415, 417, 794 P.2d 716, 718 (1990). Here, the parties agree that the MSA includes a valid and enforceable arbitration provision, so we address the narrow issue of whether this particular dispute fits within the provision's scope. The arbitrability of a dispute presents a question of contract construction that this court reviews de novo. *Masto v. Second Judicial Dist. Court*, 125 Nev. 37, 44, 199 P.3d 828, 832 (2009). That review only addresses arbitrability, not the merits of the underlying dispute. *Clark Cty. Pub. Emps. Ass'n v. Pearson*, 106 Nev. 587, 591, 798 P.2d 136, 138 (1990).

## A.

There is a strong presumption in favor of arbitrating a dispute where a valid and enforceable arbitration agreement exists between the parties. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650

SUPREME COURT
OF
NEVADA

(O) 1947A

(1986); *Int'l Ass'n of Firefighters, Local No. 1285 v. City of Las Vegas*, 112 Nev. 1319, 1323, 929 P.2d 954, 957 (1996) ("Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration.") (internal quotation marks omitted); *cf. Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (holding that no presumption of arbitrability arises when the court is determining whether an arbitration agreement exists in the first place). This presumption applies differently based on the scope of the arbitration agreement. 1 Thomas H. Oehmke & Joan M. Bovins, *Commercial Arbitration* § 6:9 (3d ed. 2021) (noting that the scope of the clause indicates the parties' intent to arbitrate a particular dispute); 7 Philip L. Bruner & Patrick J. O'Connor, Jr., *Bruner & O'Connor on Construction Law* § 21:122 (2014) (explaining that the presumption of arbitrability applies differently under broad versus narrow arbitration clauses). Under a broad arbitration provision—i.e., one that encompasses all disputes related to or arising out of an agreement—a presumption of arbitrability applies and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Clark Cty. Pub. Emps. Ass'n*, 106 Nev. at 591, 798 P.2d at 138 (quoting *AT&T Techs., Inc.*, 475 U.S. at 650 (holding that only the strongest evidence against arbitration will remove a dispute from the purview of a broad arbitration clause)). Even matters tangential to the subject agreement will be arbitrable under a broad provision. 1 Oehmke, *supra*, § 6:10 (Supp. 2021) ("[W]hen the language of the arbitration provision is broad, a claim will proceed to arbitration if the underlying allegations simply touch upon any matters covered by the provision.").

SUPREME COURT
OF
NEVADA

(O) 1947A

Given that a strong presumption of arbitrability applies if the MSA provision is deemed broad, Peek argues it is narrow—a plausible position at first blush—because the clause states that a dispute is not arbitrable "unless" two prerequisites are satisfied. *Cf. Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 226 (2d Cir. 2001) (reasoning that words and phrases alone do not dictate whether a clause is broad or narrow, although words of limitation typically indicate a narrower clause). But unlike other narrowly phrased arbitration agreements, the MSA provision does not limit arbitration to specific issues, subject matter, or dollar amounts. Instead, it incorporates the prime contract's terms by looking to (1) whether the prime contract includes an arbitration requirement, and (2) whether the dispute "involves issues of fact or law which [SR] is required to arbitrate under the terms of the prime contract." *See Clark Cty. Pub. Emps. Ass'n*, 106 Nev. at 591, 798 P.2d at 138 (holding that an issue was arbitrable where not expressly excluded from the arbitration provision); *cf. Papalote Creek II, LLC v. Lower Colo. River Auth.*, 918 F.3d 450, 455-56 (5th Cir. 2019) (noting that a narrow arbitration clause limits arbitration to a specific category of disputes at the exclusion of others); 1 Oehmke, *supra*, § 6:11 (Supp. 2021) ("A narrow clause limits the arbitrator's scope of authority by either including specific disputes or excluding other identified issues.").

Accordingly, where a prime contract includes a broad arbitration provision, the MSA provision's purported limits are nearly illusory. The prime contract applicable here includes an expansive arbitration provision that covers all disputes between SR and UHS, including "matters in question . . . arising out of or relating to the contract."

*See* 2 Oehmke, *supra*, § 25:17 (stating that the standard AIA Document A201 contract includes a broad arbitration clause). The MSA provision is therefore likewise broad because it requires SR and Peek to arbitrate a "dispute . . . involv[ing] issues of fact or law [that SR] is required to arbitrate under the terms of the prime contract," which in turn includes any dispute or "matter[ ] in question" arising under the agreement. Further, because the MSA provision does not limit its application to disputes involving issues of fact or law that both the contractor *and subcontractor* must arbitrate under the prime contract, it is irrelevant to determining the MSA provision's scope that UHS is not a defendant to the underlying action and that Peek is not a party to the prime contract's arbitration agreement. *See Clark Cty. Pub. Emps. Ass'n*, 106 Nev. at 591, 798 P.2d at 138. Rather, under the MSA provision's plain language, if SR would have to arbitrate an issue of fact or law under the prime contract with UHS, then in turn, SR and Peek must arbitrate that same issue.

In sum, as applied here, the MSA provision is broad and an attendant presumption of arbitrability applies. Meanwhile, Peek provides no evidence to rebut this presumption and show that the parties intended to exclude this dispute from arbitration. *See Clark Cty. Pub. Emps. Ass'n*, 106 Nev. at 591, 798 P.2d at 138 ("[I]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.") (emphasis and internal quotation marks omitted). Lacking forceful evidence of the parties' intent to exclude this dispute from arbitration, Peek's dispute is presumptively arbitrable under the parties' agreement. This interpretation does not create what Peek characterizes as

SUPREME COURT
OF
NEVADA

(O) 1947A

the absurd result of mandating arbitration of *all* disputes between Peek and SR; it mandates arbitration of only those disputes including common issues of fact or law that SR must arbitrate with UHS under the prime contract, which the parties freely agreed to do. *See Holcomb Condo. Homeowners' Ass'n v. Stewart Venture, LLC*, 129 Nev. 181, 187, 300 P.3d 124, 128 (2013) (recognizing Nevada's interest in protecting persons' freedom to contract).

B.

Even crediting Peek's argument that the MSA provision is narrow, this dispute is arbitrable because it fits within the provision's terms. *Clark Cty. Pub. Emps. Ass'n*, 106 Nev. at 591, 798 P.2d at 138 (holding that where no express provision excluded arbitration the court could not say with "positive assurance" that the issue was not arbitrable (emphasis omitted)); 1 Oehmke, *supra*, § 6:9 (noting that under a narrow clause "the sole issue for the arbiter is a dispute that, on its face, falls within the purview of the clause"). A narrow provision limits arbitration to specific issues or circumstances; unlike under broad provisions, collateral issues to the subject agreement are not arbitrable under narrow provisions. *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261-62 (10th Cir. 2005); 1 Oehmke, *supra*, § 6:11. In further contrast to a broad provision, "a narrow clause indicates a weak presumption of arbitrability." 1 Oehmke, *supra*, § 6:11 (Supp. 2021). But even under a narrow provision, the court "should order arbitration of particular grievances 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Int'l Ass'n of Firefighters, Local No. 1285*, 112 Nev. at 1324, 929 P.2d at 957 (quoting

*AT&T Techs., Inc.*, 475 U.S. at 650); *Clark Cty. Pub. Emps. Ass'n*, 106 Nev. at 591, 798 P.2d at 138.

Fairly read, consistent with even a weak presumption of arbitrability, the MSA provision covers Peek's dispute because it raises issues of fact and law regarding the reasonableness of Peek's change orders that SR must arbitrate with UHS under the prime contract. UHS must compensate SR—and Peek—only for "costs *necessarily* incurred by [SR] in the proper performance of the Work." (emphasis added). *See* W. Henry Parkman, *Cost-Plus Contracting Without a GMP—Contractor's Risks, Owner's Rights?*, 29 No. 11 Construction Litig. Rep. 1, 3-4 (2008) (explaining that a project owner is responsible only for reasonably incurred costs under a cost-plus contract with a GMP). Costs incurred due to a contractor's fault or mismanagement are unnecessary and unreasonable, and therefore, a contractor and owner may dispute whether those costs are reimbursable under the contract. *Id.*; *see also Kerner v. Gilt*, 296 So. 2d 428, 431 (La. Ct. App. 1974) ("In any cost-plus contract there is an implicit understanding between the parties that the cost must be reasonable and proper."). Peek alleges that SR's mismanagement caused its additional costs—i.e., unnecessarily directing Peek to import 150,000 square feet of additional material to elevate the building pad's subgrade. Peek's allegation amounts to a "claim" about whether its costs were reasonably incurred, which involves issues of fact and law that SR would have to arbitrate with UHS when seeking reimbursement for those costs under the prime contract, at least until the GMP is exceeded. The GMP was not exceeded when this claim was filed, and Peek must therefore arbitrate this dispute with SR because SR must arbitrate the dispute with UHS.

SUPREME COURT
OF
NEVADA

(O) 1947A

Other provisions in the prime contract and MSA confirm the arbitrability of this dispute. *See Eversole v. Sunrise Villas VIII Homeowners Ass'n*, 112 Nev. 1255, 1260, 925 P.2d 505, 509 (1996) ("Contractual provisions should be harmonized whenever possible . . . ."). This court may order consolidation of arbitration to avoid potentially conflicting awards and the additional time and expense involved with separate proceedings if mutual consolidation agreements exist. *Compare Exber, Inc. v. Sletten Constr. Co.*, 92 Nev. 724, 725-27, 732, 558 P.2d 517, 519-20, 524 (1976) (ordering consolidated arbitration where common issues of law existed and all parties agreed to consolidation), *with Pueblo of Laguna v. Cillessen & Son, Inc.*, 682 P.2d 197, 200 (N.M. 1984) (holding that consolidation of arbitration was improper because consolidation was not provided for in any of the contract documents). This court's decision in *Exber, Inc. v. Sletten Construction Co.* is illustrative: There, as here, the project owner and general contractor entered an AIA Document A201 agreement that included a broad arbitration provision. 92 Nev. at 724, 558 P.2d at 518. The general contractor then entered several subcontracts, which each extended the contractor's right to arbitrate disputes under the prime contract to the subcontractors. *Id.* at 724-25, 558 P.2d at 519. The owner later rejected the contractor's claim seeking to recover its subcontractors' additional costs; the subcontractors accordingly made a demand on the contractor to submit the claim to arbitration, who in turn made an arbitration demand on the owner. *Id.* at 725, 558 P.2d at 519. The owner challenged joint arbitration because it did not have a contractual duty to arbitrate with the subcontractors. *Id.* at 727, 558 P.2d at 520. This court ordered consolidation of the arbitration



proceedings because the owner/contractor dispute involved the same evidence, witnesses, and legal issues as those involved in the contractor/subcontractors dispute. *Id.* at 732, 558 P.2d at 524.

The prime contract includes a consolidation-of-arbitration provision in matters involving common legal and factual issues:

> [E]ither party may consolidate an arbitration conducted under this Agreement with any other arbitration to which it is a party provided that (1) the arbitration agreement governing the other arbitration permits consolidation, (2) *the arbitrations to be consolidated substantially involve common questions of law or fact*, and (3) the arbitrations employ materially similar procedural rules and methods for selecting arbitrator(s).

(emphasis added). Section 15.4.4 of the prime contract further provides that SR may include subcontractors in arbitration under the agreement if SR "deems [the subcontractor] relevant to the matter in dispute." The MSA also includes a consolidation clause, which provides that "the same arbitrator(s) utilized to resolve the dispute between any Owner and Contractor shall be utilized to resolve the dispute under [the MSA] provision." *See* 2 Oehmke, *supra*, § 25:54 (labeling a provision like that used in the MSA as a consolidation clause). And like the intertwined disputes in *Exber*, common questions of law and fact permeate the disputes between Peek/SR and SR/UHS—for example, who is at fault for importing the additional material? Did UHS direct SR to work faster, thus prompting SR's alleged request of Peek? Was importing additional material reasonable in view of the larger project timeline? Did Peek and SR comply with the proper change-order procedures? More than likely, the Peek/SR dispute will require the same witnesses and evidence to answer these same

Supreme Court
OF
Nevada

(O) 1947A

questions in the SR/UHS dispute. This court therefore has the power to order arbitration because mutual consolidation-of-arbitration provisions exist, and common questions of fact and law drive these disputes.

To the extent Peek argues that this dispute is not arbitrable because it does not (and will not) involve UHS, we disagree. UHS has ultimate authority to approve or reject change-order requests up to the GMP, as increased (or not) by earlier change orders. UHS—not SR—rejected Peek's change orders, and UHS cautioned SR against issuing payment to Peek without its approval. Potential outcomes of the Peek/SR dispute implicate UHS's financial interests—e.g., if the finder of fact concludes that Peek's additional costs were reasonable, and SR may seek reimbursement from UHS. Indeed, UHS already raised Peek's dispute as a matter in question between itself and SR under the prime contract, thus permitting consolidation of these common disputes under Section 15.4.4 of the prime contract. It is simply too early to tell if UHS will bear financial responsibility for Peek's costs, and absent necessary facts in this pre-discovery moment, Peek cannot avoid arbitration by strategically omitting UHS from its complaint. *Phillips*, 106 Nev. at 417, 794 P.2d at 718 (holding that a party may not use artful pleading to avoid arbitration); *see also Seal & Co. v. A.S. McGaughan Co.*, 907 F.2d 450, 453-55 (4th Cir. 1990) (holding that subcontractor must comply with alternative dispute resolution provision of the prime contract where the subject dispute involved interpretation of the prime contract's terms); *Frohberg Elec. Co. v. Grossenburg Implement, Inc.*, 900 N.W.2d 32, 38 (Neb. 2017) (holding that issue was arbitrable between subcontractor and contractor even though

arbitration clause only referenced disputes between the contractor and owner).

### III.

In sum, the MSA provision incorporates the prime contract provision, which is broad, so the presumption of arbitrability applies, which Peek fails to rebut. The dispute is therefore arbitrable. And even construing the MSA provision narrowly, this dispute is arbitrable because it fits within the face of the arbitration provision: SR must arbitrate whether costs included in a change order are reasonable and reimbursable under the prime contract's arbitration agreement. Further, the prime contract and the MSA both include consolidation-of-arbitration provisions, and UHS is involved in this dispute because it has a potential financial interest in it, thus permitting consolidation of the Peek/SR and SR/UHS disputes. We therefore reverse the district court's order denying SR's motion to compel and remand with instructions to the district court to order that this matter proceed to arbitration.

_____, J.
Pickering

We concur:

_____, J.
Silver

_____, J.
Cadish