877 P.2d 284

**CITY OF COTTONWOOD, a municipal corporation, Plaintiff–Appellant,**

v.

**JAMES L. FANN CONTRACTING, INC., an Arizona corporation, Defendant–Appellee.**

**No. 1 CA–CV 92–0111.**

Court of Appeals of Arizona,
Division 1, Department D.

May 19, 1994.

Reconsideration Denied July 27, 1994.

---

Mangum, Wall, Stoops & Warden, P.L.L.C. by Jon W. Thompson and Robert W. Warden, Flagstaff, for plaintiff-appellant.

Jennings & Haug by D. Kim Lough, Phoenix, for defendant-appellee.

## OPINION

GERBER, Judge.

Appellant City of Cottonwood (Cottonwood) appeals from the trial court's determination that appellee Fann Contracting (Fann) requested arbitration in a timely manner and the trial court's order that the parties proceed to arbitration. Cottonwood also appeals the trial court's award of attorney's fees to Fann. We hold that the arbitrator is the proper party to consider the issue of timeliness, but because the arbitrator independently determined that Fann's request was timely, the court did not err in sending the parties to arbitration. We further hold that the trial court acted within its discretion in its award of attorney's fees.

### BACKGROUND

On or about September 9, 1989, Cottonwood and Fann contracted for the construction by Fann of Wastewater Collection System Lift Station Numbers 1, 2, 3 and 4 in Cottonwood. The agreement included an arbitration clause, which provided in part:

No demand for arbitration of any claim dispute or other matter that is required to be referred to ENGINEER initially for

decision in accordance with paragraph 9.11 [1] will be made until the earlier of (a) the date on which the ENGINEER has rendered a decision or (b) the tenth day after the parties have presented their evidence to the ENGINEER if a written decision has not been rendered by ENGINEER before that date. No demand for arbitration of any such claim, dispute or other matter will be made later than thirty days after the date on which the ENGINEER has rendered a written decision in respect thereof in accordance with paragraph 9.11....

On December 21, 1989, Arthur Beard (Beard), the project engineer, rejected Fann's submittals for pumps for the job. The next day, Fann requested information from Beard regarding his reasons for rejection. Beard sent a letter to Fann dated January 22, 1990, enumerating his reasons for rejecting the pump submittals. Fann immediately submitted to Beard a letter from the pump manufacturer disputing Beard's rejection. Beard again rejected the pumps on January 24, 1990.

The parties met on February 5, 1990, to discuss details regarding the pump submittals. Afterwards, Fann made a claim for an increase in both contract time and price for delivery of new pumps.

On February 26, 1990, Fann requested a 161 day extension for completion of the contract. Fann claimed it needed the extension because of generator delay and because of the difficulty with pump submittals. On March 27, 1990, Beard issued a change order granting the 56 days for the generator delay but denying the 105 days for the pump difficulties. Fann accepted the contract change order the same day. Cottonwood approved the contract change order on April 4, 1990.

Meanwhile, Fann also requested a contract change order in the amount of $3503.40 for additional labor and parts regarding temperature and moisture control sensors on the pumps. On March 28, 1990, Beard responded by forwarding a "self-explanatory" letter dated March 27, 1990, from the project electrical engineer. The electrical engineer's letter recommended that Fann's requested changes be denied because the parts and labor were included in the original contract. Beard's letter of March 28, 1990 did not formally deny Fann's request but implied denial by enclosing the electrical engineer's letter.

On April 19, 1990, Fann requested a formal decision in accord with paragraph 9.11 of the contract from the *City* Engineer (not Beard, the *Project* Engineer) on the contract change orders. The letter was forwarded to Beard. On May 16, 1990, Beard sent a letter to Fann stating there were "no changes in the previous decisions." On May 22, 1990, Fann filed a demand for arbitration with the American Arbitration Association (A.A.A.).

By letter dated August 15, 1990, Cottonwood requested that the A.A.A. decide as a preliminary issue that the case was not arbitrable because Fann's arbitration demand of May 22, 1990 was untimely. Cottonwood argued that Fann's request for arbitration was not made within 30 days of the engineer's written decision as required by the arbitration clause. Cottonwood pointed out that Beard submitted his decision to Fann rejecting Fann's pump submittals in his December 21, 1989 letter thereby making Fann's May 22, 1990 request for arbitration untimely. Fann responded that because the parties continued to "negotiate" regarding the pumps, Beard's second letter of May 16, 1990 constituted the final written decision under section 9.11 of the contract, and therefore its demand for arbitration was within 30 days of the engineer's written decision.

Cottonwood argued, further, that if the A.A.A. allowed the arbitrator to decide the issue, Cottonwood desired a hearing on the timeliness matter prior to proceeding to arbitration. The A.A.A. referred the matter to an arbitrator who set a date for a preliminary hearing on arbitrability and timeliness.

---

**1.** Paragraph 9.11 of the contract provided that the engineer will be the initial interpreter of the contract and the judge of the acceptability of the work. Any claims or disputes with respect to the work to be performed under the contract, or any changes with respect to contract time or price must initially be referred to the engineer in writing with a request for formal decision. The engineer will then render a decision in writing within a reasonable time.

Before the preliminary hearing, however, the arbitrator decided the case was arbitrable, canceled the preliminary hearing, and set an evidentiary hearing. Cottonwood then moved to stay arbitration arguing that the issue of timeliness was one for the court to decide.

The trial court ordered the parties to proceed to arbitration without indicating whether it had reached that decision because 1) the demand for arbitration was timely and thus did not constitute waiver or 2) the issue of timeliness was one for the arbitrator to decide. The trial court also denied Fann's request for attorney's fees incurred in the judicial proceedings to date.

The parties proceeded to arbitration, which resulted in an award to Fann. In an action to confirm the arbitrator's award, Fann successfully renewed its request for attorney's fees incurred in the prior judicial proceedings. Cottonwood's motion for new trial was denied, with these additional rulings:

2. The Court finds that the issue of timeliness of any request for arbitration is an issue for the Court.

3. The Court further finds that without waiver, Fann made a timely demand for arbitration on May 22, 1990.

Apparently, both the trial court and the arbitrator decided that the demand for arbitration was timely.[2]

Cottonwood raises a number of issues on appeal regarding whether the trial court's determination of timeliness was proper. If we decide that Fann's demand for arbitration was untimely, then the decision of Cottonwood's engineer would be final pursuant to the contract and thus Fann should not have been entitled to any relief in the proceedings below. Before we can review the trial court's decision, we first must address the jurisdictional issue: who properly hears the issue of timeliness—the arbitrator or the trial court?

## DISCUSSION

The Arizona Legislature has adopted the Uniform Arbitration Act,[3] Arizona Revised Statutes Annotated ("A.R.S.") sections 12–1501 to 12–1518, which greatly limits judicial review of an agreement to arbitrate. *Smitty's Super–Valu*, 22 Ariz.App. at 180, 525 P.2d at 311; *Einhorn v. Valley Medical Specialists, P.C.*, 172 Ariz. 571, 572–73, 838 P.2d 1332, 1333–34 (App.1992). Moreover, the public policy of Arizona favors arbitration. *Id.* Because of the public policy favoring arbitration, arbitration clauses are construed liberally and any doubts about whether a matter is subject to arbitration are resolved in favor of arbitration. *U.S. Insulation, Inc. v. Hilro Constr. Co.*, 146 Ariz. 250, 258, 705 P.2d 490, 498 (App.1985).

The issue of timeliness is complicated. An untimely demand could constitute repudiation/waiver of the arbitration clause, failure of a procedural condition, or failure of a condition precedent to activation of the clause. While appellant raises the "condition precedent" argument in passing, the analysis does not apply in the present case.[4]

2. Assuming, arguendo, that this Court should decide the trial court has jurisdiction to hear the issue of timeliness, we are bound by the trial court's findings of fact unless clearly erroneous, but we are not bound by conclusions of law. *Combs v. DuBois*, 135 Ariz. 465, 468, 662 P.2d 140, 143 (App.1982). The timeliness issue here is a factual dispute regarding when the 30 day period began to run and the record provides reasonable evidence to support the trial court's ruling. If, however, the trial court had decided the timeliness issue amounted to repudiation, we could review that conclusion of law *de novo.*

If this Court should decide the arbitrator has jurisdiction to hear the issue of timeliness, the arbitrator's decision is final and unreviewable. *See Smitty's Super–Valu, Inc. v. Pasqualetti*, 22 Ariz.App. 178, 180, 525 P.2d 309, 311 (1974) ("Within the confines of the arbitration, the deci-

sion of the arbitrators as to the facts and law is final and cannot be reversed by a court, even if the court believes it to be erroneous.").

3. Unif. Arbitration Act, 7 U.L.A. (1985).

4. Some courts have defined timeliness as a "condition precedent" to the arbitration agreement thereby making timeliness an issue for the court. A condition precedent has been defined as a condition that must be performed before the agreement becomes effective, and which calls upon the happening of some event before the contract shall be binding on the parties. *Black's Law Dictionary* 293 (6th ed. 1990). Such a condition, however, must be express in the contract. *Valley Nat'l Bank v. Cotton Growers Hail Ins., Inc.*, 155 Ariz. 526, 528, 747 P.2d 1225, 1227 (App.1987). The court will not infer conditions

Untimeliness may constitute repudiation of the arbitration agreement if the repudiating party has acted so inconsistently with the arbitration agreement as to waive its right to proceed under the agreement. Repudiation is a voluntary relinquishment of a known right that usually entails prejudice to the other party. Because repudiation calls into question the existence of the arbitration agreement, repudiation is an issue for the court.

On the other hand, whether a procedural condition has been met does not call into question the existence of the agreement but, instead, affects how that agreement will be interpreted and, as discussed below, is therefore an issue for the arbitrator. We now apply these principles to the arbitration agreement in question.

### Existence of the Arbitration Agreement

The trial court's review on a motion to compel arbitration is limited to the determination whether an arbitration agreement truly exists. A.R.S. § 12–1502(C) (1982). In *Hilro* we found two methods to challenge a motion to compel arbitration: 1) legal or equitable defenses or 2) repudiation. 146 Ariz. at 256, 705 P.2d at 496.

### Legal or Equitable Defenses

First, the challenging party could prove that there exist grounds "in law or in equity for the revocation of any contract." *Id.* (citing *Prima Paint v. Flood & Conklin Mfg.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) and Ariz.Rev.Stat.Ann. § 12–1501). The list of legal or equitable grounds includes allegations that the contract is void for lack of mutual consent, consideration, or capacity, or voidable for fraud, duress, lack of capacity, mistake, or violation of a public purpose. *Hilro*, 146 Ariz. at 253, 705 P.2d at 493. Timeliness is not included. Timeliness is not a legal or equitable defense because it

does not question the existence of the arbitration agreement. Moreover, Cottonwood is not arguing that the arbitration agreement itself was invalid but rather that a valid arbitration clause had been repudiated or "waived."

### Repudiation

The challenging party could also argue that the arbitration clause itself has been repudiated, resulting in waiving the repudiating party's right to arbitration. *Hilro*, 146 Ariz. at 256, 705 P.2d at 496. *Hilro* cites *Bolo, EFC,* and *Rancho Pescado* as examples of the type of repudiation that results in waiver of the arbitration agreement. *Hilro*, 146 Ariz. at 254, 705 P.2d at 494; *Bolo Corp. v. Homes & Son Constr. Co.*, 105 Ariz. 343, 464 P.2d 788 (1970); *EFC Develop. Corp. v. F.F. Baugh Plumbing & Heating, Inc.*, 24 Ariz.App. 566, 540 P.2d 185 (1975); *Rancho Pescado, Inc. v. Northwestern Mut. Life Ins. Co.*, 140 Ariz. 174, 680 P.2d 1235 (App.1984). We discuss each briefly.

In *Bolo*, a subcontractor refused the contractor's request to submit a dispute to arbitration. 105 Ariz. at 344, 464 P.2d at 789. The contractor initially elected to file a lawsuit for breach of contract. *Id.* Six months later, however, the contractor attempted to compel arbitration. *Id.* The Arizona Supreme Court held that when the contractor chose to file suit against the subcontractor, the contractor acquiesced in the subcontractor's rejection of arbitration, thereby waiving its right to compel arbitration. *Id.* at 347, 464 P.2d at 792.

In *EFC*, the court held that proof of waiver requires showing conduct inconsistent with the arbitration remedy. 24 Ariz.App. at 569, 540 P.2d at 188. Inconsistency usually is found when one party engages in conduct preventing arbitration, proceeds at all times

---

precedent if they are not clear from the language of the contract. *Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 470, 733 P.2d 652, 667 (App.1986).

In the present case, the arbitration clause did not say an untimely demand for arbitration "waives" the arbitration clause entirely or that

the arbitration agreement becomes effective only upon a timely demand. Thus, the 30 day time limitation does not go to existence of the arbitration clause. Instead, it precludes appellee from raising in arbitration whatever factual dispute appellee failed to submit to arbitration within the 30 days.

in disregard of arbitration,[5] expressly agrees to waive arbitration, or unreasonably delays requesting arbitration. *Id.* EFC moved to compel arbitration while simultaneously filing a complaint with the Registrar of Contractors seeking revocation of Baugh's license, and filing mechanics' and materialmen's liens. *Id.* The court held that these actions were not inconsistent with utilization of the arbitration remedy and refused to imply waiver from EFC's simultaneous actions. *Id.* at 569–70, 540 P.2d at 189–90.

In *Rancho Pescado,* under a license agreement containing an arbitration clause, Northwestern agreed to supply water to Rancho Pescado's fishery. 140 Ariz. at 178, 680 P.2d at 1239. Northwestern eventually revoked the license agreement and Rancho Pescado filed a complaint for damages. *Id.* Although Northwestern repeatedly attempted to compel arbitration, it failed to formalize the court order denying arbitration and file an appeal therefrom while simultaneously appearing in court on other issues. *Id.* at 181, 680 P.2d at 1242. The court, relying on *EFC,* found its failure to be a tactical decision not to arbitrate and a tacit repudiation of the arbitration clause. *Id.* at 181–82, 680 P.2d at 1242–43. Northwestern was held to have waived its right to compel arbitration. *Id.*

■ Fann's conduct is distinguishable from *Bolo, EFC* and *Rancho Pescado.* Fann made no attempt to file suit against Cottonwood prior to requesting arbitration. Moreover, Fann did not acquiesce to a denial of arbitration as was done in *Rancho Pescado.* Fann's attempt to compel arbitration also shows that it had not voluntarily relinquished its right to arbitrate. We do not find Fann's actions inconsistent with use of the arbitration remedy.

■ While the court in *EFC* included unreasonable delay in its definition of conduct inconsistent with utilizing the arbitra-

tion remedy, untimeliness alone does not always rise to "unreasonable delay." Repudiation by unreasonable delay requires not only a failure to adhere to time constraints in the arbitration agreement but also prejudice to the other party.[6] *See Buchalo v. Country Mut. Ins. Co.,* 83 Ill.App.3d 1040, 39 Ill.Dec. 89, 94, 404 N.E.2d 473, 478 (1980). If Cottonwood did not rely on any act, conduct, or non-action to its detriment or was not misled by any acts or statements of Fann, there is no prejudice and thus no repudiation due to unreasonable delay. *Id.* 39 Ill.Dec. at 94–95, 404 N.E.2d at 478–79. Cottonwood has not alleged that it suffered prejudice as a result of Fann's allegedly untimely submission to arbitration.

Moreover, Fann's conduct is inconsistent with traditional contract notions of waiver. In *American Continental Life Ins. Co. v. Ranier Constr. Co.,* the court held that waiver is either the express, voluntary, intentional relinquishment of a known right or conduct so inconsistent with an intent to assert the right that an intentional relinquishment can be inferred. 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980); *see also City of Tucson v. Koerber,* 82 Ariz. 347, 356, 313 P.2d 411, 418 (1957). There exists no evidence of Fann's clear, voluntary relinquishment of a known right. Indeed, Fann requested arbitration.

■ Cottonwood cites many California cases holding that timeliness is always an issue for the court. *See Publicists Local 818 v. National Screen Service Corp.,* 183 Cal. App.2d 491, 7 Cal.Rptr. 238 (1960) (holding that waiver may include failure of party to proceed to arbitration in manner and at time provided in arbitration provision); *Butchers Union v. Farmers Market,* 67 Cal.App.3d 905, 136 Cal.Rptr. 894 (1977) (holding that failure to make a demand within stated time constitutes waiver of right to arbitrate and is thus an issue for the court); *Platt Pacific,*

---

5. Many cases holding a party has behaved inconsistently with the agreement to arbitrate involve facts in which one party has sued the other in trial court and then attempted to compel arbitration.

6. Cottonwood hypothesizes a party who waits five years before compelling arbitration to sup-

port its contention that the arbitrator should not decide issues of timeliness. We agree that untimeliness could be so egregious that we will assume prejudice and repudiation from the unreasonable delay. However, those facts are not the case before us.

*Inc. v. Andelson,* 6 Cal. 4th 307, 24 Cal. Rptr.2d 597, 606, 862 P.2d 158, 167 (1993) (holding that waiver, in the context of a failure to timely demand arbitration, does not require a finding of a voluntary relinquishment of a known right). California, however, has not adopted the Uniform Arbitration Act, and its courts are given a broad scope of inquiry into arbitration agreements.[7] While there exists a split of authority nationally regarding whether timeliness is an issue for the court or the arbitrator, many jurisdictions holding that timeliness is an issue for the court have not adopted the Uniform Arbitration Act. *See Sanford Constr. Co. v. Rosenblatt,* 25 Ohio Misc. 99, 54 O.O.2d 97, 266 N.E.2d 267, 269–70 (Ohio Mun.Ct.1970); *Brick Township Municipal Utilities Authority v. Diversified R.B. & T. Constr. Co., Inc.,* 171 N.J.Super. 397, 409 A.2d 806, 809–810 (A.D.1979). *But see Bartley, Inc. v. Jefferson Parish School Board,* 302 So.2d 280, 283 (La.1974); *Kwalick v. Bosacco,* 329 Pa.Super. 235, 478 A.2d 50, 52 (1982); *but see also County of Rockland v. Primiano Constr. Co. Inc.,* 51 N.Y.2d 1, 431 N.Y.S.2d 478, 481, 409 N.E.2d 951, 954 (1980). Of those jurisdictions having adopted the Uniform Arbitration Act,[8] most consider timeliness an issue for the arbitrator.[9] *See Village of Carpentersville v. Mayfair Constr. Co.,* 100 Ill.App.3d 128, 55 Ill.Dec. 412, 416–17, 426 N.E.2d 558, 562–63 (1981); *Exber, Inc. v. Sletten Constr. Co.,* 92 Nev. 721, 558 P.2d 517, 520–21 (1976); *Brothers Jurewicz, Inc. v. Atari, Inc.,* 296 N.W.2d 422, 427 (Minn.1980); *SCA Services, Inc. v. General Mill Supply,* 129 Mich.App. 224, 341 N.W.2d 480, 482–83 (1983) (holding issues regarding failure to comply with procedural aspects of an arbitration agreement are for the arbitrator, while an issue of waiver based on lapse of over five years before

demanding arbitration is for the court); *but see Frederick Contractors, Inc. v. Bel Pre Medical Center, Inc.,* 274 Md. 307, 334 A.2d 526, 530 (1975).

Because of the policy favoring arbitration and this state's adoption of the Uniform Arbitration Act, we hold timeliness to be an issue for the arbitrator.

 A court may consider an untimely demand for arbitration as a factor in its determination of repudiation. Unless repudiation is clear,[10] however, the court should not infer it. *See Rancho Pescado; Red Sky Homeowners Ass'n v. Heritage Co.,* 701 P.2d 603 (Colo.App.1984) (holding that a party can waive so long as the intent to waive is clear); *Cordillera Corp. v. Heard,* 41 Colo.App. 537, 592 P.2d 12, 13, *aff'd,* 200 Colo. 72, 612 P.2d 92 (1980) (holding that for a waiver of right to arbitrate to be valid, the waiver must be a voluntary relinquishment of a known right); *International Ass'n of Firefighters, Local No. 1285 v. City of Las Vegas,* 104 Nev. 615, 764 P.2d 478, 482 (1988) (holding that because there is a strong policy in favor of arbitration, waiver should not be lightly inferred); *Clark County v. Blanchard Constr. Co.,* 98 Nev. 488, 653 P.2d 1217, 1219 (1982). An allegation of repudiation based on unreasonable delay must include clear evidence of 1) prejudice suffered by the other party and 2) a demand for arbitration so egregiously untimely and inconsistent with an intent to assert the right to arbitrate that an intentional relinquishment can be inferred. Although a case may not present evidence sufficient to establish repudiation in this manner to the court, the trier of fact may still decide that a timely demand is a procedural condition to arbitration, and that a party's demand was untimely, and therefore conclude that

---

**7.** California law provides that the court may determine if "an agreement to arbitrate the controversy exists, unless it determines that: the right to compel arbitration has been waived by the petitioner; or grounds exist for revocation of the agreement." Cal.Code Civ.Proc. § 1281.2 (1994).

**8.** Thirty-five jurisdictions, including Arizona, have adopted the Uniform Arbitration Act. Notes to A.R.S. § 12–1501 (1982).

**9.** The United States Supreme Court has held that the arbitrator should determine procedural con-

ditions to arbitration as well as the substantive issues due to the intertwining of procedure and substance. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 556–59, 84 S.Ct. 909, 917–19, 11 L.Ed.2d 898 (1964).

**10.** Once a party has given notice insisting on arbitration, as appellee did in the present case, the burden is heavy on the opposing party seeking to prove repudiation/waiver. *Rancho Pescado,* 140 Ariz. at 181, 680 P.2d at 1242.

that party forfeited its right to arbitrate. But, short of repudiation, that decision regarding the failure of a procedural condition is for the arbitrator and not the court to make.

Nevada, which has adopted the Uniform Arbitration Act,[11] views timeliness as a "procedural condition." In *Exber v. Sletten*, the Nevada Supreme Court held that timeliness of demand for arbitration was a factual issue to be determined by the arbitrator. 92 Nev. 721, 558 P.2d 517 (1976). That court held that all doubts concerning arbitrability should be resolved in favor of arbitration, relying in part on the strong policy favoring arbitration in jurisdictions following the Uniform Arbitration Act. *Id.* at 522. Bifurcation of the adjudication process between arbitrator and court is exactly what the parties sought to avoid by entering into their arbitration agreement. *Id.* We agree. The party seeking to avoid the arbitration provision carries a heavy burden to establish that timeliness is an issue of repudiation for the court rather than an issue of a procedural condition for the arbitrator. This rule is especially true when the sole ground is an arguably timely demand for arbitration causing no prejudice to the opposing party.

In conclusion, the trial court did not err in ordering the parties to arbitration. While it should have and indeed may have done so because Cottonwood failed to show that Fann repudiated the arbitration clause, if it did so because of its own incorrect view that it had jurisdiction to consider the issue of timeliness, that action would not be a grounds for reversal. *Gary Outdoor Advertising Co. v. Sun Lodge, Inc.*, 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982) (trial court will be affirmed when it reaches correct conclusion, even if it does so for incorrect reason). Apart from repudiation, the arbitrator has sole jurisdiction to consider the issue of timeliness, and therefore our authority to

review ends with our evaluation of the trial court's failure to find waiver.

## ATTORNEY'S FEES

Finally, Cottonwood argues that the trial court erred in its October 7, 1991 award of attorney's fees granted pursuant to A.R.S. section 12–341.01(A) (1992).[12] Cottonwood contends the granting of attorney's fees was error for the following reasons: 1) the trial court did not retain jurisdiction to award attorney's fees, 2) the arbitrator's award was final, 3) Fann was not entitled to an award of attorney's fees, and 4) the affidavit of fees is inadequate because it fails to distinguish between fees incurred in the arbitration and court proceedings.

## BACKGROUND

On April 30, 1991, when the trial court granted the order for the parties to proceed to arbitration, it denied Fann's requests for attorney's fees. The arbitration decision provided that the administrative fees and expenses of the A.A.A. and the arbitrator's compensation were to be borne equally between the parties but did not make any award of attorney's fees. Fann then applied for confirmation of the arbitration award as part of the same action originally brought by Cottonwood to stay arbitration, and also requested attorney's fees for the costs associated with its defense of the initial stay proceedings.

## DISCUSSION

### Trial Court Lacked Jurisdiction

Cottonwood notes that the application for confirmation of an arbitrator's award is to be filed and served "in the same manner in which complaints are filed and served in civil actions." A.R.S. § 12–1511 (1982).[13] Cottonwood contends that the confirmation was a

---

11. Relevant sections of the Uniform Arbitration Act have been adopted by both Arizona and Nevada. Nev.Stat. 38.015 *et seq.* (1993).

12. A.R.S. § 12–341.01(A) states, "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees...."

13. The language of A.R.S. § 12–1511 regarding the procedure about how to file and serve an application for confirmation is additional to the language in the comparable provision of the Uniform Arbitration Act and unique to Arizona. Unif. Arbitration Act § 11, 7 U.L.A. 133 (1985).

new proceeding and that the prior proceeding regarding the motion for stay of arbitration concluded with the court's order of April 30, 1991, which sent the matter to arbitration and denied Fann's request for attorney's fees. Cottonwood recognizes that we have held that where a trial court had previously adjudicated matters related to arbitration and had expressly retained jurisdiction over the parties, the "new filing" requirements of section 12–1511 did not apply. *EFC Dev. Corp. v. F.F. Baugh Plumbing & Heating, Inc.*, 24 Ariz.App. 566, 572, 540 P.2d 185, 191 (1975). However, Cottonwood argues that the trial court had not expressly retained jurisdiction and Fann had not appealed the denial of attorney's fees and therefore, in its view, the previous denial of attorney's fees was final and conclusive.

■ Cottonwood misunderstands the purpose behind A.R.S. section 12–1511. We stated in *EFC* that the need to file for confirmation as prescribed in the statute applies only to those situations in which the parties have not been previously subjected to the jurisdiction of the court in connection with the arbitration proceedings. *Id.* The primary concern in *EFC*, as with notice pleading in general, is to give the opponent fair notice of the court's jurisdiction and of the nature of the claim, as well as to allow an adequate opportunity to respond. *Id.; see Mackey v. Spangler*, 81 Ariz. 113, 301 P.2d 1026 (1956); *Kepner v. Western Fire Ins. Co.*, 109 Ariz. 329, 509 P.2d 222 (1973); Ariz. R.Civ.P. 7, 8 (Supp.1993). As long as the trial court's jurisdiction already has been invoked and a pending action has not formally concluded, section 12–1511 does not require commencement of a new action to confirm an arbitration award. Such a practice would be wasteful of the court's and the parties' time and resources.

■ Furthermore, a demand for attorney's fees at the conclusion of the proceedings to stay arbitration may have been premature. With arbitration proceedings yet to commence, a "successful party" on the merits under A.R.S. section 12–341.01 had yet to be determined. Because the trial court later granted fees incurred in the judicial proceedings, it seems reasonable to infer that the request was initially denied due to its premature nature. We do not find this denial to preclude the trial court from later reconsidering attorney's fees while the judicial proceedings were still pending. We conclude that the court had jurisdiction to consider attorney's fees.

### Arbitrator's Award Was Final

■ Cottonwood next argues that the claim for attorney's fees is waived because Fann did not submit the claim to an arbitrator. This argument is ill-founded because arbitrators are prohibited from awarding attorney's fees. A.R.S. § 12–1510 (1982).[14]

### Fann Was Not Entitled to Attorney's Fees

Cottonwood claims that Fann was not a "prevailing party" because Fann lost in arbitration on its main claim regarding the adequacy of the pump submittals. Although Fann did prevail on the issue of arbitrability, and the arbitrator rendered a decision in favor of Fann in an amount over $23,000, Cottonwood contends the pump submittal claim constituted a "separate and distinct" claim and Fann should not receive fees attributable to that claim under *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 189, 673 P.2d 927, 933 (App.1983). We disagree.

■ The trial court has discretion to determine who is a successful party when multiple claims are brought with varied success or where a successful claim is intertwined with one for which fees are not awardable. *Schwartz v. Farmers Ins. Co.*, 166 Ariz. 33, 38, 800 P.2d 20, 25 (App.1990); *Trus Joist Corp. v. Safeco Ins. Co.*, 153 Ariz. 95, 110, 735 P.2d 125, 140 (App.1986). Because of the trial court's proximity to the matter and its better familiarity with the parties, the suit, and the issues, an appellate court is usually reluctant to overturn its ruling on attorney's fees. *Associated Indem.*

14. A.R.S. § 12–1510 states "unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, *not including counsel fees*, incurred in the conduct of the arbitration, shall be paid as provided in the award." (Emphasis added).

Corp. v. Warner, 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985). The trial court has discretion in awarding attorney's fees under A.R.S. section 12–341.01. *Wheel Estate Corp. v. Webb*, 139 Ariz. 506, 508, 679 P.2d 529, 531 (App.1983). We will uphold the exercise of that discretion if the record contains a reasonable basis to do so. *Id.* Attorney's fees should not be allowed on unsuccessful separate and distinct claims that could have been litigated separately, but fees may be awarded even on unsuccessful legal theories where a party has accomplished the result sought in litigation. *China Doll*, 138 Ariz. at 189, 673 P.2d at 933.

According to the affidavit of Fann's attorney, Fann sought only those costs associated with the judicial proceedings to defeat the motion for stay. The trial court did not award attorney's fees accrued throughout arbitration, but only the fees listed in the affidavit. Cottonwood has not provided us with a sufficient basis for determining how defending the motion for stay was separate from the unsuccessful arbitration claim. We are not persuaded that the trial court abused its discretion.

### Inadequate Affidavit

Cottonwood lastly claims that the affidavit of attorney's fees is inadequate because it fails to distinguish between fees incurred for the court proceedings and fees incurred for the arbitration proceedings. Fann's affidavit details the date, time, and nature of the work for which Fann sought and was granted attorney's fees. The affidavit also states it requests only those fees associated with the trial court action to defeat the stay of arbitration. Even if the trial court could not award attorney's fees incurred in the arbitration proceedings, it has significant discretion to award fees in a matter intertwined with another matter for which it may not grant attorney's fees. *Trus Joist Corp.*, 153 Ariz. at 110, 735 P.2d at 140. Even though some material obtained through discovery for the judicial proceedings was used in the arbitration proceedings, we find no abuse of discretion in the award of attorney's fees under the circumstances of this case. Fann's affidavit was an adequate basis for the court's award of attorney's fees.

CLABORNE, P.J., and McGREGOR, J., concur.