NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

NARESH MAGO, et al., *Plaintiffs/Appellants*,

*v.*

ARIZONA ESCROW & FINANCIAL CORPORATION, *Defendant/Appellee*.

No. 1 CA-CV 19-0753

FILED 3-4--2021

---

Appeal from the Superior Court in Maricopa County
No. CV2017-094803
The Honorable Tracey Westerhausen, Judge

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART,
AND REMANDED**

---

COUNSEL

Bueler Jones LLP, Chandler
By Gordon S. Bueler
*Counsel for Plaintiffs/Appellants*

Jaburg & Wilk PC, Phoenix
By Kathi Mann Sandweiss, Roger L. Cohen
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Cynthia J. Bailey joined.

---

**C A T T A N I**, Judge:

**¶1**         Naresh Mago appeals the superior court's grant of summary judgment in favor of Arizona Escrow & Financial Corp. ("Arizona Escrow") on Mago's contract and related claims arising from Arizona Escrow's role as the escrow agent in Mago's attempted purchase of a business.  For reasons that follow, we affirm summary judgment on Mago's contract claim, but reverse on the related claims of breach of fiduciary duty and negligence, vacate the attorney's fee award, and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**         Mago contracted with Don and Judy Fulghum ("Sellers") to purchase a Subway restaurant franchise.  Arizona Escrow acted as the escrow agent for the transaction.  The purchase agreement set forth escrow instructions, including a requirement that certain notices be sent via mail, but did not include any wiring instructions.

**¶3**         To open escrow, Mago deposited a portion of the purchase price with Arizona Escrow.  After opening the escrow account, Mago's email account was purportedly hacked.  After the hack, an imposter created an email address that matched the Sellers' email address except for an inconspicuous "rn" where the Sellers' correct email address had an "m."  The night before the release of the funds, the imposter and Mago emailed each other, discussing the purchase without including Arizona Escrow in the email chain.

**¶4**         The next morning, the imposter emailed wiring instructions to Arizona Escrow, copying Mago on the email.  Neither Mago nor Arizona Escrow noticed the slightly different email address used by the imposter.  In response, Mago emailed Arizona Escrow instructing them to release the funds.  Noting that the name on the bank account provided in the email was different than the Sellers' name or any other entity related to the transaction, Arizona Escrow responded to Mago and the imposter

questioning the wiring instructions. The imposter replied to Arizona Escrow and Mago, "yes, that is the name on the account I want the money to be wired. Its [sic] our company account and you can send in the wire there." Arizona Escrow then emailed Mago asking for clarification on the amount to be wired. Again, Mago confirmed the amount to be wired and that Arizona Escrow should release the funds. Arizona Escrow released the funds and emailed confirmation of the wire transfer to Mago and the imposter later that day. Because the correct Sellers never received the funds, the sale did not go through. The funds were never recovered.

¶5 Mago filed a complaint against Arizona Escrow alleging negligence, breach of fiduciary duty, and breach of contract. Arizona Escrow moved for summary judgment on all claims. The superior court granted the motion, finding that Mago waived his breach of contract claim (based on a contractual provision requiring that written notices be delivered by mail) by failing to timely raise the specific theory supporting the claim and, alternatively, finding the claim meritless because Mago expressly instructed Arizona Escrow to perform in a manner contrary to the delivery-by-mail provision. The court did not specifically address Mago's breach of fiduciary duty or negligence claims but also dismissed those claims. The court awarded Arizona Escrow $50,000 in attorney's fees under A.R.S. § 12-341.01(A) and $3,077.60 in costs.

¶6 Mago timely appealed the final judgment, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶7 Summary judgment is proper only if there is no genuine issue as to any material fact and, based on those undisputed facts, the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). We review a grant of summary judgment de novo, viewing all the facts and all reasonable inferences "in the light most favorable to the party against whom judgment was entered." *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 315–16, ¶¶ 2, 8 (App. 1998).

## I.     Breach of Contract Claim.

¶8 Mago's breach of contract claim arose from the purchase agreement (the "Agreement"), which included the escrow instructions at issue here. Mago asserts that Arizona Escrow breached the Agreement by failing to mail disbursement instructions to the parties to the contract notwithstanding a provision requiring Arizona Escrow to mail written "notices" to the parties' addresses. Arizona Escrow responds that: (1) the

3

notice provision does not apply to wiring instructions; (2) if the notice provision applies, Mago waived the requirement by accepting email communications throughout the escrow process; and (3) Mago also waived this claim because he failed to timely disclose his theory as required by Rule 26.1 of the Arizona Rules of Civil Procedure.

¶9 We review issues of contract interpretation de novo. *ELM Ret. Ctr., LP v. Callaway*, 226 Ariz. 287, 290, ¶ 15 (App. 2010). When the terms of the escrow instructions are plain and unambiguous, interpretation of those terms is a question of law for the court. *See Smith v. Melson, Inc.*, 135 Ariz. 119, 121 (1983). We interpret the contract to give meaning to the parties' intent, and "look to the plain meaning of the words as viewed in the context of the contract as a whole." *ELM Ret. Ctr.*, 226 Ariz. at 290–91, ¶ 15 (citation omitted).

¶10 While the Agreement unambiguously required that notices "required or permitted to be given hereunder" be delivered by physical mail, the question here is whether wiring instructions were notices for these purposes. The Agreement specified only three notices: (1) Buyer's notification that it met all conditions of sale; (2) Seller's notification that it met all conditions of sale; and (3) notification of transfer papers on completion of sale. No contract provision provided that wiring instructions are notices. And interpreting notices to encompass wiring instructions would frustrate other provisions in the Agreement, such as a time is of the essence clause, and we will not provide terms that contradict other contractual provisions. *Cf. Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 153 (1993). Thus, Mago's claim fails.

¶11 Moreover, we agree with Arizona Escrow that even assuming the notice provision applied to wiring instructions, Mago waived any mailing requirement by inconsistent conduct and by failing to assert this alleged contractual right. *See Am. Cont'l Life Ins. Co. v. Rainer Constr. Co., Inc.*, 125 Ariz. 53, 55 (1980). Mago instructed the imposter by email to send the wiring instructions to Arizona Escrow "asap." Later that same morning, he received the email from the imposter that included the wiring instructions. Instead of raising the physical mailing requirement, he confirmed that Arizona Escrow should release the funds according to the instructions in the email. Therefore, Mago waived any mailing requirement regarding wiring instructions, and we affirm summary judgment in favor of Arizona Escrow on Mago's breach of contract claim.

## II.    Breach of Fiduciary Duty and Negligence Claims.

¶12    Noting that the superior court did not expressly address his breach of fiduciary duty and negligence claims, Mago asserts that the superior court failed to address the relevant standards of care and resolved factual determinations that should have been left to the jury. We agree.

¶13    "The relationship of the escrow agent to the parties to the escrow is one of trust and confidence." *Maganas v. Northroup*, 135 Ariz. 573, 576 (1983). In carrying out their duties, escrow agents must act with "scrupulous honesty, skill, and diligence." *Berry v. McLeod*, 124 Ariz. 346, 351 (1979). This includes "taking reasonable efforts to ascertain the identity of the named parties to the transaction." *Maxfield v. Martin*, 217 Ariz. 312, 315, ¶ 14 (App. 2007).[1] Generally, "whether the defendant has met the standard of care—that is, whether there has been a breach of duty—is an issue of fact that turns on the specifics of the individual case." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 10 (2007).

¶14    Here, the record establishes that Arizona Escrow: (1) had two different email addresses for the Sellers before releasing the funds; (2) received wiring instructions to wire funds to an entity that had no relation to the Sellers' personal or business name; and (3) had at least one prior incident where escrow funds were fraudulently transferred using email. Mago argues that Arizona Escrow could have easily followed-up by telephone or used a known email address to confirm the wire instructions with the Sellers, and thus did not take sufficient steps to identify the recipient of funds. Arizona Escrow counters that it was not negligent and did not breach its fiduciary duty because it followed up on the account name and confirmed the wiring amount with Mago. But although this is significant evidence a jury might find highly persuasive, it is not an absolute defense to Mago's claim. Based on the discrepancies in the email addresses and the unusual wiring instructions, we cannot say as a matter of law that a reasonable escrow agent would not have perceived those facts as evidence of a potential fraud, especially in light of Arizona Escrow's past encounters with fraudulent email instructions. *Maxfield*, 217 Ariz. at 314, ¶ 12. Accordingly, Mago is entitled to present this claim to a jury.

---

[1]    Arizona Escrow argues that it did not have a duty to take reasonable steps to ascertain the parties, but given the holding in *Maxfield*, 217 Ariz. at 315, ¶ 14, we reject this contention.

**¶15**        Arizona Escrow further asserts that Mago's claim fails for lack of expert testimony regarding the standard of care.  A defendant that holds itself out as offering professional services "is required to exercise the skill and knowledge normally possessed by members of the profession." *Chambers v. W. Ariz. CATV*, 130 Ariz. 605, 607 (1981) (citation omitted). Arizona Escrow argues that under *Burkons v. Ticor Title Ins. Co. of Cal.*, 168 Ariz. 345, 353 (1991), expert testimony is required to establish the standard of care, and that because Mago did not provide any such expert testimony, summary judgment was proper.  But *Burkons* itself neither required nor discussed expert testimony with regard to the escrow agent's duty to recognize evidence of fraud.  168 Ariz. at 353–54.

**¶16**        Moreover, although expert testimony may be helpful in establishing a professional's standard of care, an expert is not required "when the disputed subject is something that persons unskilled in the relevant area are capable of understanding and are therefore able to decide relevant fact questions without the opinions of experts."  *Rudolph v. Ariz. B.A.S.S. Fed'n*, 182 Ariz. 622, 626 (App. 1995).  And here, the transaction was not complex — it was a payment from a single purchaser to a single seller. And the alleged breach stems from the escrow agent not perceiving a discrepancy in an email address and an unusual account name as evidence of fraud.  Whether a reasonable escrow agent would perceive potential fraud is not necessarily beyond a layperson's understanding.

**¶17**        Further, Mago in fact proffered expert testimony.  Although Arizona Escrow argues that the superior court did not specifically designate the proposed witness as an expert, Arizona Escrow did not object to the proposed expert's qualifications in the superior court; instead it attacked his credibility.  Thus, Arizona Escrow waived any challenge to the expert's qualifications.  *Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007).

**¶18**        Arizona Escrow also asserts that it did not have "actual knowledge" of the fraud and had no duty to investigate and disclose facts it would perceive as fraud.  Arizona Escrow argues that the Arizona Supreme Court's ruling reversing the grant of summary judgment to an escrow agent in *Burkons* is instructive, because in that case, the escrow agent knew that the borrower was not using the funds as it agreed to with the lender, so the duty to disclose arose only based on the agent's actual knowledge of fraud.  168 Ariz. at 353.  But the question in *Burkons* was not whether the agent affirmatively knew a fraud was being committed; instead, the Arizona Supreme Court held that the relevant question was whether the agent was aware of facts that a reasonable escrow agent could

*perceive* as evidence of fraud: "[an] escrow agent [cannot] close [her] eyes in the face of known facts and console [herself] with the thought that no one has yet confessed fraud." *Id.*

¶19        Here, Arizona Escrow had two different email addresses for Sellers in its records *before* the transfer occurred yet did not confirm the correct recipient.  Moreover, Arizona Escrow's Chief Financial Officer ("CFO") stated that an escrow agent who noticed the different email addresses would presumably suspect suspicious activity.  Arizona Escrow attempts to qualify the CFO's testimony by pointing out that she also testified that Arizona Escrow met its standard of care.  But these portions of the CFO's testimony simply highlight discrepancies better left for the jury to decide.  Because Arizona Escrow had all the facts in its possession before the transaction, no additional investigation was necessary, and whether a reasonable escrow agent would perceive the discrepancies as evidence of fraud was for a jury to decide.  *See id.* at 354; *see also Gipson*, 214 Ariz. at 143, ¶ 10.

¶20        Finally, Arizona Escrow argues that summary judgment was proper because: (1) Mago failed to notify Arizona Escrow that his email account had previously been hacked; (2) Mago himself introduced the imposter's email address into the transaction; and (3) Mago instructed Arizona Escrow to wire the funds as directed by the imposter.  Mago disputes that he knew his email had been hacked before the transaction.  Regardless, and notwithstanding the persuasive nature of this evidence, attributing culpability to Mago does not entitle Arizona Escrow to summary judgment, rather it raises potential comparative fault, which is a fact question for the jury.  *See Williams v. Thude*, 188 Ariz. 257, 259 (1997); *see also* Ariz. Const. art. 18, § 5; A.R.S. § 12-2505(A).  Accordingly, we reverse the superior court's grant of summary judgment in favor of Arizona Escrow on Mago's breach of fiduciary duty and negligence claims.

## III.    Attorney's Fees.

¶21        Although portions of the case were based in tort, the superior court awarded $50,000 in attorney's fees to Arizona Escrow because the tort claims were related to Mago's contract claims for which attorneys' fees were awardable under A.R.S. § 12-341.01(A).  The court "has significant discretion to award fees in a matter intertwined with another matter for which it may not grant attorney's fees." *City of Cottonwood v. James L. Fann Contracting, Inc.*, 179 Ariz. 185, 195 (App. 1994).  Here, the court awarded Arizona Escrow its attorney's fees based in part on Arizona Escrow prevailing on *all* claims.  Because we reverse the summary judgment on

Mago's breach of fiduciary duty and negligence claims, we vacate the fee award without prejudice to a future request if appropriate.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm the judgment in favor of Arizona Escrow on Mago's contract claim, but reverse summary judgment against Mago on his breach of fiduciary duty and negligence claims, vacate the award of attorney's fees to Arizona Escrow, and remand for further proceedings. Arizona Escrow requests an award of attorney's fees on appeal under A.R.S. § 12-341.01. In an exercise of our discretion, we deny the request.



AMY M. WOOD • Clerk of the Court
FILED:    AA